_____



**SO ORDERED,**

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: June 6, 2018**

**The Order of the Court is set forth below. The docket reflects the date entered.**

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **KIESHA YATES OSBORN** | **CASE NO. 1602016EE** |

Hon. Eileen N. Shaffer                                                  Attorneys for the Debtor
eshaffer@shaffer-law.com
P. O. Box 1177
Jackson, MS  39215-1177

Hon. Steven H. Smith
ssmith@shsattorneys.com
4316 Old Canton Rd., Suite 200
Jackson, MS  39211

Hon. Derek A. Henderson                                                  Chapter 7 Trustee
derek@derekhendersonlaw.com
1765-A Lelia Dr., Suite 103
Jackson, MS  39216

Hon. Kevin A. Rogers                                          Attorneys for Brandon Osborn
krogers@wellsmar.com
Hon. Roy H. Liddell
royliddell@wellsmar.com
300 Concourse Blvd., Suite 200
Ridgeland, MS  39157

Edward Ellington, Judge

## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW ON THE *MOTION TO APPROVE COMPROMISE AND SETTLEMENT - BRANDON OSBORN*

**THIS MATTER** came before the Court on the *Motion to Approve Compromise and Settlement - Brandon Osborn* (Dkt. #170) filed by Derek A. Henderson, Chapter 7 Trustee, and the *Objection to Trustee's Motion to Approve Compromise and Settlement - Brandon Osborn* (Dkt. #181) filed by Kiesha Yates Osborn. Having considered the pleadings, testimony and evidence presented at trial, the Court finds that the *Motion to Approve Compromise and Settlement - Brandon Osborn* (Dkt. #170) filed by Derek A. Henderson, Chapter 7 Trustee, is not well-taken and should be denied.

### FINDINGS OF FACT[1]

Brandon Wayne Osborn (Brandon) and Kiesha Yates Osborn (Kiesha)[2] participated in a marriage ceremony in 2007 and lived as husband and wife until it was discovered that Kiesha's divorce in her prior marriage was never finalized. At some point the parties' relationship soured, and they started down the litigious path in state court that eventually led Kiesha to file a bankruptcy petition.

On September 4, 2014, Kiesha filed a *Complaint for Equitable Distribution, for Injunctive Relief, for Entry of a Temporary Restraining Order and Petition for Temporary Relief*, Case No.

---

[1]These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

[2]Because the parties have the same last name, the Court will refer to Brandon and Kiesha by their first names for the sake of clarity. The Court intends no disrespect in doing so.

45CH1:14-cv-908 (Chancery Complaint) in the Chancery Court of Madison County, Mississippi (Chancery Action). In the Chancery Complaint, Kiesha states that during their cohabitation, she and Brandon acquired both real and personal property. One of the prayers of the Chancery Complaint is that the chancery court liquidate and equitably distribute their assets. Brandon was awarded the temporary, exclusive right to the home located at 198 Reunion Boulevard, Madison, Mississippi, 39110.

In May of 2016, the chancellor found that both Brandon and Kiesha came to the court with unclean hands. The chancellor ordered: Kiesha to reimburse Brandon for some expenses; held Brandon in contempt and ordered him to pay Kiesha $2,500.00; and ordered Brandon to serve five (5) days in the Madison County Detention Center, which was suspended. The bankruptcy stay went into effect and an order has never been entered by the chancellor memorializing this ruling. (Trial Tr. at 10).[3]

After Kiesha filed the Chancery Action in 2014, Brandon filed three separate lawsuits against Kiesha in the courts of Madison County, Mississippi, and Brandon filed a third-party complaint against Kiesha in the County Court of Madison County. Kiesha has filed counterclaims against Brandon in two of the lawsuits. These lawsuits are more fully described below (in chronological order):

> 1. On February 2, 2015, Brandon filed a *Complaint for Declaratory and Other Relief* Case. No. 45CO1:15-cv-00112-JH (County Court Suit) in the County Court of Madison County, Mississippi. This complaint requested similar relief to the relief requested by Kiesha in the Chancery Complaint. At the time this lawsuit was filed,

---

[3]On March 19, 2018, the clerk filed a motion to dismiss this case for lack of prosecution. Kiesha responded on April 3, 2018, in opposition to the clerk's motion to dismiss. No further action has occurred in this case since that time.

the chancery court had entered an agreed temporary order regarding the two LLCs and other matters in the Chancery Action.  Subsequently, on December 7, 2015, the county court entered an *Opinion and Order* granting Kiesha's motion to transfer this action to the Chancery Court of Madison County, Mississippi.

2.  Brandon was a defendant in a lawsuit filed on April 10, 2015, in the County Court of Madison County, Mississippi, in the case styled:  *Two Streets, Inc. v. B & K Storage Solutions, LLC, Caroline Storage Solutions, LLC., and Brandon Osborne [sic]*, Case No. 45CO1:15-cv-00322-JR (Two Streets Suit).  On August 19, 2015, Brandon filed a third-party complaint against Kiesha.

3.  On October 13, 2015, Brandon filed a complaint against Kiesha in the Circuit Court of Madison County styled:  *Brandon Wayne Osborn v. Kiesha Yates Osborn,* 45CI1:15-cv-00252-ssr (Felony Affidavit Suit)  In this complaint, Brandon alleges that Kiesha filed a false felony affidavit against him for stalking and harassing her.  Brandon's complaint seeks damages against Kiesha for malicious prosecution, slander, defamation, tortious interference with employment, to name a few.  Kiesha filed a counter-claim against Brandon and seeks damages against Brandon for intentional infliction of emotional distress, slander, and defamation.

On September 8, 2017, the clerk filed a motion to dismiss this case for lack of prosecution.  Brandon responded in opposition to the clerk's motion to dismiss.  On April 6, 2018, Brandon filed a motion to consolidate this case with the case below 45CI1:16-cv-00109-ssr.

4.  On June 2, 2016, Brandon filed a complaint against Kiesha and others in the Circuit Court of Madison County styled:  *Brandon Osborn v. Carrie Mastin, Kiesha Osborn, InfuSystem, Inc., and Ciscura, Inc.,* 45CI1:16-cv-00109-ssr (Employment Suit).  InfuSystem, Inc. is Kiesha's current employer and Carrie Mastin was Kiesha's supervisor.[4]  Brandon's complaint seeks damages against the defendants for tortious interference with employment, slander, defamation, negligence, civil conspiracy, and invasion of privacy.

On February 23, 2018, Kiesha (and her Chapter 7 Trustee, Derek A. Henderson) filed an answer to the complaint and a counterclaim against Brandon.

On April 6, 2018, Brandon filed a motion to consolidate (along with several other matters) this case with the case above 45CI1:15-cv-00252-ssr.  A hearing on the

---

[4]At the February 23, 2018, trial before this Court, Kiesha's attorney stated that Ciscura is a company Kiesha worked for at one time, and it has since gone out of business.  The complaint against Carrie Mastin was dismissed for lack of personal jurisdiction. (Trial Tr. at 6-7, Adv. No. 1700007EE, Adv. Dkt. #53).  The two remaining defendants are Kiesha and InfuSystem, Inc.

motion to consolidate was set for May 30, 2018.

On June 22, 2016, Kiesha filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Derek A. Henderson was appointed the Chapter 7 Trustee (Trustee).

Brandon filed a *Proof of Claim* (No. 8) (Brandon's Claim) on October 5, 2016. Brandon's Claim includes six (6) parts and totals $2,325,746.01.[5] Part A-5 and Part A-6 are pertinent to the matter before the Court. Part A-5 is related to Carolina Storage Solutions, LLC (in the amount of $26,190.50), and Part A-6 is for attorney fees related to the Two Streets Suit (in the amount of $20,725.00).

Kiesha filed an *Objection to Proof of Claim No. 8 Filed on Behalf of Brandon Wayne Osborn* (Dkt. #66) on February 15, 2017. On July 10, 2017, the *Trustee's Objection to Claim No. 8 - Brandon Wayne Osborn* (Dkt. #104) was filed. In his objection, the Trustee states that "A-3, A-4, A-5, A-6 are related to pre-petition litigation that has been resolved and settled . . . . [and]. . . should be disallowed. A-1 and A-2 are related to [the Employment Suit and the Felony Affidavit Suit] that have not been resolved . . . . [these claims] as filed should be disallowed and be amended and supplemented only by a final judgment."[6]

At the time Kiesha filed bankruptcy, Kiesha owned a one-half (½) interest in a house located

---

[5]A-1 pertains to the Employment Suit ($1,500,000.00); A-2 pertains to the Felony Affidavit Suit ($750,000.00); A-3 pertains to the Two Streets Suit ($28,830.51); A-4 pertains to the County Court Suit/Chancery Action (undetermined); A-5 pertains to Brandon's one-half (½) interest in Caroline Storage Solutions, LLC. ($26,190.50); and A-6 pertains to attorney fees incurred by Brandon in the Two Streets Suit ($20,725.00). No final judgments have been entered in any of the lawsuits between the parties, therefore, these amounts are unliquidated claims against Kiesha.

[6]*Trustee's Objection to Claim No. 8 - Brandon Wayne Osborn*, Case No. 1602016EE, Dkt. #104, unnumbered page 2, July 10, 2017.

16-02016-ee  Dkt 225  Filed 06/06/18  Entered 06/06/18 15:54:56  Page 6 of 18

at 198 Reunion Boulevard, Madison, Mississippi, 39110 (Property).[7]  Kiesha owned the Property

with Brandon.  Pursuant to 11 U.S.C. §  541,[8] the Property became property of Kiesha's bankruptcy

estate.  Therefore, the bankruptcy estate and Brandon each own an undivided one-half (½) interest

in the Property.

On February 13, 2017, the Trustee commenced an adversary proceeding against Brandon

seeking authority to sell the Property pursuant to § 363(h).[9]  In the Adversary, the Trustee seeks to

sell the bankruptcy estate's interest and Brandon's interest in the Property.  On March 10, 2017, the

*Answer and Defenses of Brandon Osborn* (Adv. Dkt. #8) was filed in which Brandon objects to the

sale of the Property.

On October 24, 2017, the Trustee filed a *Motion to Approve Compromise and Settlement -*

*Brandon Osborn* (Dkt. #170) (Motion).  In the Motion, the Trustee states that he has reached a

settlement of the Adversary, the Chancery Action, and parts of Brandon's Claim.  The terms of the

settlement are that in exchange for Brandon paying the bankruptcy estate $15,000.00, the Adversary

will be dismissed; the Trustee will execute a quitclaim deed in favor of Brandon transferring the

bankruptcy estate's interest in the Property to Brandon; the Chancery Action (including Brandon's

counterclaim) will be dismissed; and Parts A-5 and A-6 of Brandon's Claim would be withdrawn

and dismissed.  The Trustee alleges that this settlement is fair and reasonable and requests that the

---

[7]As noted above, in the Chancery Action, Brandon was awarded the temporary, exclusive right to this home.

[8]Hereafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[9]Adversary Proceeding No. 1700011EE (Adversary).

Court approve the settlement.[10]

Kiesha filed an *Objection to Trustee's Motion to Approve Compromise and Settlement - Brandon Osborn* (Dkt. #181) (Objection) on November 14, 2017.  In her Objection, Kiesha alleges that the appraisal of the Property obtained by the Trustee was not complete and did not adequately assess the value of the property.  Kiesha stated that she would obtain an appraisal of the property, and if the appraisal shows that there is more equity, Kiesha requests that the Court allow the property to be listed for six (6) months.  Kiesha's Objection does not address the terms of the settlement agreement regarding the dismissal of the Chancery Action and Brandon's Claim, however, at trial, the attorney for Kiesha stated that Kiesha was in agreement with the dismissal of the Chancery Action and Part A-5 and Part A-6 of Brandon's Claim. Kiesha did however object to the proposal to accept $15,000.00 for the Property. (Trial Tr. at 18).

After several unsuccessful attempts at settling, the Motion and Objection were set for trial on March 9, 2018.  At the conclusion of the trial, the parties attempted to reach a settlement one more time.  Once this attempt at reaching a settlement failed, the Court ordered the transcript from the trial.  The Court took the matter under advisement after the official transcript was filed on May 10, 2018 (Dkt. #223).

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant

---

[10]The settlement will not affect any of the numbered one (1) through four (4) lawsuits listed at the bottom of page 3 and continued through page 5 of this Opinion.  The settlement would only dismiss the initial lawsuit, the Chancery Action, Kiesha filed on September 4, 2014, against Brandon in the Chancery Court of Madison County, Mississippi.

to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

## II.

### A.  STANDING TO OBJECT

At the trial, the attorney for Brandon raised the issue of whether Kiesha had standing to object to the settlement.  The Court of Appeals for the Fifth Circuit has stated:  "In a railroad reorganization case the First Circuit observed: [In approving compromises] 'the court must act independently, out of its own initiative, for the benefit of all creditors. This obligation prevails even where the creditors are silent.' *Matter of Boston & Providence R. Corp.*, *supra*, 673 F.2d 11 (1st Cir.1982); *see also* Ashbach v. Kirtley, 289 F.2d 159, 166 (8th Cir.1961). We agree."[11]  Since the Court has an independent duty to review and determine whether a settlement should be approved, the Court will not address the issue of whether Kiesha has standing to object to the settlement.

### B.  STANDARDS FOR APPROVAL OF A SETTLEMENT

"One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.,* 334 B.R. 800, 811 (Bankr. N.D.Tex. 2005)(citations omitted).  "Compromises are favored in bankruptcy.  Many cases involve litigation between the representative of the estate and an adverse party.  Much of that litigation is settled.  In such situations, the settlement must be approved by the court."  9 Collier on Bankruptcy ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)(footnotes omitted). After the settlement is reached, the parties must file a motion to approve the settlement and notice

---

[11]*U.S.A. v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 299 (5th Cir. 1984)

the settlement out pursuant to Federal Rules of Bankruptcy Procedure 9019(a) and 2002(a)(3).[12]

Pursuant to Rule 9019(a), "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The Court, however, should only approve the settlement when the settlement is "fair and equitable and in the best interest of the estate." *Connecticut General Life Insurance Co. v. United Companies Financial Corp. (In re Foster Mortgage Corp.),* 68 F.3d 914, 917 (5th Cir. 1995) (citations omitted).

In the case of *In re Jackson Brewing Company,*[13] the Court of Appeals for the Fifth Circuit established a three part test for determining whether a settlement is fair, equitable and in the best interest of the estate. The Fifth Circuit held that a court should consider:

(1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,

(2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

(3) All other factors bearing on the wisdom of the compromise.

*In re Jackson Brewing*, 624 F.2d at 602 (citations omitted).

Under the third, and so called catch-all provision, the Fifth Circuit added two additional factors that a court should consider when determining whether to approve a settlement:

First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *Foster Mortgage Corp.,* 68 F.3d at 917. Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* at 918 (internal citations omitted).

---

[12]Hereafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

[13]*Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599 (5th Cir. 1980).

*Official Committee of Unsecured Creditors v. Cajun Electric Power Cooperative, Inc. (In re Cajun Electric Power Cooperative, Inc.),* 119 F.3d 349, 356 (5th Cir. 1997).

"A decision to accept or to reject a compromise or settlement is within the sound discretion of the Court. . . .Essential to the process of evaluating proposed settlements, then, 'is the need to compare the terms of the compromise with the likely rewards of litigation.'" *In re Idearc Inc.,* 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009)(citations omitted).

### C.  SETTLEMENT WITH BRANDON

As stated above, the terms of the settlement are that in exchange for Brandon paying the bankruptcy estate $15,000.00, the Adversary will be dismissed; the Trustee will execute a quitclaim deed in favor of Brandon transferring the bankruptcy estate's interest in the Property to Brandon; the Chancery Action (including Brandon's counterclaim) will be dismissed; and Parts A-5 and A-6 of Brandon's Claim would be withdrawn and dismissed.  The Trustee alleges that this settlement is fair and reasonable and requests that the Court approve the settlement.  Kiesha alleges that the equity in the Property is much higher and that a payment of $15,000.00 in exchange for the Property is too low.

### 1. The Probability of Success on the Merits and Complexity and Expense of Litigation[14]

The Court acknowledges that at trial, Kiesha's attorney stated that Kiesha had no objection to the dismissal of the Chancery Action or Part A-5 and Part A-6 of Brandon's Claim.[15]  Since the Court has an independent duty to examine any settlements, the Court must apply the factors

---

[14]Since the two factors are intertwined, the Court will address them together.

[15]Trial Tr. at 18.

established by the Fifth Circuit to determine whether the settlement should be approved by the Court.

"With respect to the first factor, it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. 'The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision. . . .'" *Cajun Electric*, 119 F.3d at 356 (citation omitted).

As to the first two factors, no testimony or evidence was presented as to the probability of success on the merits or on the complexity and expense of the litigation regarding the Chancery Action, Brandon's Claim, or the Adversary. The Court is aware, however, that this is a personal matter between Brandon and Kiesha and that the parties have been litigating for years. Without any proof as to the probability of success or the complexity and expense of the litigating the Chancery Action, the Court cannot find that either of these two factors weigh in favor of the settlement being fair and equitable.

### 2. All Other Factors
### a. Best Interests/Wishes of the Creditors

"We believe a bankruptcy court should consider the amount of creditor support for a compromise settlement as a 'factor bearing on the wisdom of the compromise,' as a way to show deference to the reasonable views of the creditors."[16] Other than the wishes of Brandon to have the settlement approved, no testimony was presented regarding the wishes of the other creditors. Therefore, the Court cannot state that the creditors are in favor of the settlement being approved as being fair and equitable.

---

[16]*Foster,* 68 F.3d  at 918.

The Court has a duty, however, to examine the various parts of the settlement and determine whether it believes the settlement is in the best interests of the creditors as a whole.

### 1.)  Chancery Action and Brandon's Claim

At trial, the Trustee testified that by agreeing to dismiss the Chancery Action, Brandon was abandoning his claimed right to appeal the decision of the chancellor holding him in contempt and ordering him to serve five (5) days in the Madison County Detention Center.[17]  As for Brandon agreeing to dismiss Parts A-5 and A-6 of Brandon's Claim, the Trustee testified that if the estate had to reimburse B & K Storage Solutions, LLC and Caroline Storage Solutions, LLC[18] for expenses related to the various lawsuits, the LLCs would have to turn around and pay one-half (½) back to the estate.[19]  Therefore in essence, the dismissal of Part A-5 and Part A-6 would mean that the estate would not pay any money to the LLCs and would not be then reimbursed by the LLCs.[20]

The Court finds that the dismissal of the Chancery Action and the two parts of Brandon's Claim would save the estate litigation expenses.  Therefore, the Court finds that the settlement of the Chancery Action and Part A-5 and Part A-6 would be in the best interest of the creditors of Kiesha's bankruptcy estate.

### 2.)  The Property

As for the Property, the Trustee based his decision to accept $15,000.00 for the Property on

---

[17]Trial Tr. at 10-11.

[18]B & K Storage Solutions, LLC and Caroline Storage Solutions, LLC (LLCs) are the two LLCs Kiesha and Brandon jointly owned.  Both of these LLCs have been sold, and the parties have been paid their respective share of each LLC.

[19]As one-half (½) owner of the LLCs, Kiesha's bankruptcy estate would be entitled to one-half (½) of any funds received by the LLCs.

[20]Trial Tr. at 11-12.

what the parties called the Parker Gentry Appraisal[21] (Trial Exhibit T2). The Parker Gentry Appraisal was completed on January 11, 2017. The Parker Gentry Appraisal found that the market value of the Property was $450,000.00 and a quick sale or liquidation value was $360,000.00.[22]

The Trustee introduced an exhibit (Trial Exhibit T5) which showed how the Trustee arrived at the $15,000.00 settlement figure. At the top of the first page of Trial Exhibit T5 is a chart showing the recovery the estate would realize under different scenarios using the quick sale value of $360,000.00 and the market value of $450,000.00[23] from the Parker Gentry Appraisal. The Trustee testified that at the time the petition was filed, the balance owed on the mortgage on the Property was $347,874.29. Using this payoff figure, the Trustee determined what the estate would recover. The Trustee averaged the projected estate's recovery to be $11,200.00.[24] Therefore, the Trustee "thought the $15,000 including getting the Chancery Court complaint and the proof of claims resolved was fair and reasonable settlement of everything because, as you know, nothing is settled in this case, it keeps being litigated."[25]

Kiesha introduced the appraisal prepared by Mr. Randy L. Knouse (Knouse Appraisal) (Trial Exhibit T3). The Knouse Appraisal was completed on December 20, 2017, almost a year after the

---

[21]Trial Exhibit T2, *Appraisal Report* by Parker, Gentry and Parker, Inc., Jan. 12, 2017.

[22]Trial Tr. at 13.

[23]The Trustee calculated that the estate would recover $0 under the liquidation value of $360,000.00. The Trustee then determined the estate's recovery if the sale price of the property was within 95%, 90%, 85%, or 80% of the fair market value. These numbers ranged from $21,725.00 to $0.00. These are the figures the Trustee averaged to determine the recovery to the bankruptcy estate would be $11,200.00. Trial Exhibit T5; Trial Tr. at 13-14.

[24]Trial Tr. at 13-14.

[25]Trial Tr. at 14.

Parker Gentry Appraisal.  The Knouse Appraisal found the market value of the Property to be

$518,000.00 and a quick sale or liquidation value to be $388,500.00.

On Trial Exhibit T5, the Trustee calculated what the recovery to the estate would be using

the numbers from the Knouse Appraisal.  At the bottom of page one of Trial Exhibit T5 is a chart

showing what the recovery the estate would realize under different scenarios using the quick sale

value of $388,500.00 and the market value of $518,000.00 from the Knouse Appraisal.[26]  The

Trustee did not testify what the estate's average projected recovery would be using the Knouse

Appraisal fair market value of $518,000.00.  As the Trustee had done with the Parker Gentry

Appraisal values, the Court averaged the projected estate's recovery under the Knouse Appraisal.

The Court found that the average recovery to the estate would be $27,741.00 under the Knouse

Appraisal values.[27]

Mr. Knouse testified in support of his appraisal.  Mr. Knouse testified that selling the

Property via a quick sale would not do the Property justice.[28]  Mr. Knouse further testified that the

Property was in good shape and had views of the small Covington Lake and the large Reunion

---

[26]As he did with the Parker Gentry Appraisal, the Trustee calculated that the estate would recover $3,395.00 under the liquidation value of $388,500.00.  The Trustee then determined the estate's recovery if the sale price of the property was within 95%, 90%, 85%, or 80% of the fair market value of $518,000.00.  These numbers ranged from $52,087.00 to $15,568.00.  Trial Exhibit T5.

[27]On the second page of Trial Exhibit T5, the Trustee  "splits the difference" between the liquidation/quick sale values and the fair market values of the Parker Gentry Appraisal and the Knouse Appraisal.  The Trustee then calculated the estate's recovery.  Since the Court finds the Knouse Appraisal to be more persuasive, the Court will not address the "split" values as described on page 2 of Trial Exhibit T5.

[28]Trial Tr. at 25.

Lake–something very few houses in the subdivision have.[29]  "The simple fact [is] that there's nothing adverse about the house."[30]

Kiesha introduced a chart created by Mr. Knouse titled *Market Conditions Addendum Report* (Trial Exhibit 4) (Report) and dated March 6, 2018.  The Report shows the trend in sales broken down into monthly increments.  In the three (3) months prior to March 6, 2018, the *Median Comparable List Price* and *Median Comparable Sale Price* increased.  The *Median Comparable Listing Days on the Market* decreased to 179 days.  Further the *Median Sale Price as % of List Price* was 96.43%.[31]

Mr. Knouse was questioned about Brandon's right of first refusal.[32]  When asked if the right of first refusal would have an adverse affect on the Property or be an inhibition to selling the Property, Mr. Knouse answered "Absolutely not."[33]

After reviewing the testimony and both the Parker Gentry Appraisal and the Knouse Appraisal, the Court finds the Knouse Appraisal to be more persuasive.  The Knouse Appraisal was created almost a year after the Parker Gentry Appraisal.  Trial Exhibit 4 shows that over the past twelve (12) months, the list and sales price have both increased and that the days on the market have decreased.  Over the past twelve months, the *Median Sale Price as % of List Price* is 97.10%.[34]

---

[29]Trial Tr. at 35-36.

[30]Trial Tr. at 43.

[31]Trial Exhibit 4, p. 1.

[32]The Trustee is attempting to sell the Property pursuant to § 363(h).  Section 363(i) gives Brandon the right to "purchase such property at the price at which such sale is to be consummated." 11 U.S.C. § 363(i).  Such a right is commonly referred to as a right of first refusal.

[33]Trial Tr. at 49.

[34]Trial Exhibit 4.  Over the last twelve months, the *Median Sale Price as % of List Price* have been:  97.39% (Prior 7-12 mths), 97.49% (Prior 4-6 mths), 96.43% (Prior 3 mths).  These average 97.10%.

The Court does finds that it would not be in the best interest of the creditors for the Property to be sold at a quick sale or for liquidation value. Instead, the Court finds that the Property should be valued at the market value of $518,000.00 as established in the Knouse Appraisal. Further, the Court finds Mr. Knouse's opinion that if the Property is listed at $518,000.00 and "if marketed appropriately with no adverse influences as to showing it, [the Property] would sell in 150 days or less"[35] to be persuasive. The Court also finds that based on the market trends shown in Trial Exhibit 4, property in Reunion Subdivision is selling at over 95% of the list price.

Based on the market trends of property selling in the Reunion Subdivision, the Court anticipates that the Property would at a minimum sell for between 90% and 95% of $518,000.00 (between $466,200.00 and $492,100.00). After subtracting the $347,900.00[36] owed on the mortgage, that would generate at a minimum a gross equity (before expenses and costs of selling the property are deducted) between $118,300.00 and $144,200.00.

The Court finds that deeding the Property, which has over $100,000.00 in equity, to Brandon for $15,000.00 is not in the best interest of the creditors. Consequently, the settlement is not fair and equitable and should not be approved.

### b. Arms-Length Transaction

The Court finds that the settlement between the Trustee and Brandon was the result of an arms-length transaction. Kiesha has not argued, and the Court does not find, that the settlement was reached as a result of fraud or collusion.

---

[35]Trial Tr. at 48.

[36]The amount owed on the mortgage on the date the petition was filed.

### 3.  Summary

As to the first two factors, no testimony or evidence was presented as to the probability of success on the merits or on the complexity and expense of the litigation regarding the Chancery Action, Brandon's Claim, or the Adversary.  The settlement was an arms-length transaction and was not reached as a result of fraud or collusion.

As to the final two catch-all factors, the wishes of creditors and the best interest of creditors, Brandon is the only creditor who has expressed his opinion that the settlement should be approved. The Court examined all testimony and evidence to determine whether the settlement was in the best interest of the creditors.  After finding that the Knouse Appraisal is more persuasive, the Court found that the value of the Property is the fair market value of $518,000.00.

Based on the market trends of property selling in the Reunion Subdivision, the Court anticipates that the Property would at a minimum sell for between 90% and 95% of $518,000.00 (between $466,200.00 and $492,100.00).  That would generate at a minimum a gross equity between $118,300.00 and $144,200.00.   Consequently, the Court finds that the settlement amount of $15,000.00 is not in the best interest of creditors and is not fair and equitable and should not be approved.

### CONCLUSION

In order to approve a settlement, the Court must find that a settlement is "fair and equitable and in the best interests of the estate." *In re Foster,* 68 F.3d at 917 (citations omitted).  Further, "[a] decision to accept or to reject a compromise or settlement is within the sound discretion of the Court." *In re Idearc Inc.,* 423 B.R. at 182.

Based upon the Knouse Appraisal, the Court finds that the value of the Property is

$518,000.00.  Therefore, the Property has over $100,000.00 in equity.  For this reason, the Court finds that the settlement amount of $15,000.00 is not in the best interests of the creditors of the bankruptcy estate and is not a fair and equitable settlement.  As directed by the Fifth Circuit, the Court appraised itself of "the relevant facts and law [to make] an informed and intelligent decision"[37] and finds that the Motion should not be approved.

To the extent the Court has not addressed any of the parties arguments or positions, it has considered them and determined that they would not alter the result.

A separate judgment consistent with this opinion will be entered in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##

---

[37]*Cajun Electric,* 119 F.3d  at 356. (citation omitted).